IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD ALLEN DENNIS, SR.,

        Petitioner,

    v.

STEVE FRANKE,

        Respondent.

Civil No. 2:11-cv-01512-BR

OPINION AND ORDER

THOMAS J. HESTER
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

        Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
NICHOLAS M. KALLSTROM
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

        Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the Amended Petition for Writ of Habeas Corpus (#12).

## BACKGROUND

On January 5, 2006, a Tillamook County grand jury indicted Petitioner on five counts of Sodomy in the First Degree, four counts of Sodomy in the Second Degree, two counts of Sexual Abuse in the First Degree, one count of Using a Child in a Display of Sexually Explicit Conduct, and one count of Sexual Assault of an Animal. Pet. Exh. 1. Attorney Alex Hamalian was appointed to represent Petitioner. Resp. Exh. 102, p. 4.

At the request of Petitioner's trial attorney, on February 28, 2006, Dr. John Cochran completed a psychological evaluation of Petitioner. Pet. Exh. 5. Dr. Cochran noted that the results of two of the psychological tests he administered indicated Petitioner was exaggerating his symptoms in order to get immediate attention and pity. Pet. Exh. 5, p. 11. Dr. Cochran diagnosed Petitioner with an adjustment disorder, alcohol abuse, pedophilia, and a personality disorder with avoidant, immature, and self-centered features. Pet. Exh. 5, p. 16.

On June 25, 2006, Dr. George Suckow evaluated Petitioner to determine whether he could aid and assist at trial. Pet. Exh. 6. Dr. Suckow summarized the results of his evaluation:

> In my opinion, [Petitioner] is competent to participate in his own defense. He can cooperate with counsel, has the basic ability to understand the role of the participants in a courtroom, and can discuss recent and past events. There is a tendency on his part to demonstrate self-serving memory losses for the events of the charges but he is able to aid and assist in his own defense.
>
> It is my further opinion that there is no indication that he has a major mental disease or defect which would have substantially impaired his ability to appreciate the criminality of his conduct or to understand the requirements of the law.

Pet. Exh. 6, p. 1.

On September 5, 2006, Dr. Suckow evaluated Petitioner for a second time. Pet. Exh. 7. During his interview Petitioner told Dr. Suckow, *inter alia*, that he believed the year was 1971, did not know his girlfriend (the mother of his victim), did not know what a court is, and could not tell Dr. Suckow the role of a judge, because he had never seen one. Pet. Exh. 7, p. 2-3. Petitioner also claimed that he had seen "little green men about three feet tall" come into his cell and plant a bug in his chest. Pet. Exh. 7, p. 3. Dr. Suckow concluded his evaluation as follows:

> In summary, this is a young man who may be malingering some or all of his symptoms [or] who also may actually have a dissociative reaction.

3 - OPINION AND ORDER -

> It is my recommendation that he be placed at the
> Oregon State Hospital under ORS 161.730 for evaluation
> and treatment until such time as he has regained the
> capacity to aid and assist in his own defense.  In a
> hospital setting it will be much easier to sort out what
> is in fact a dissociative disorder based upon anxiety or
> a malingered situation.

Pet. Exh. 7, p. 4.  On September 8, 2006, the trial judge found

Petitioner was not fit to proceed and committed him to the Oregon

State Hospital for evaluation and treatment.  Pet. Exh. 9.

On October 17, 2006, Dr. Christopher Corbett evaluated

Petitioner at the Oregon State Hospital.  Dr. Corbett interviewed

Petitioner, reviewed his progress notes, and administered several

psychological tests, in one of which "every subscale . . . was

indicative of malingering."  Pet. Exh. 10, p. 4.  Dr. Corbett

summarized his evaluation as follows:

> [Petitioner] said that he was very depressed and
> told this examiner that he is too depressed and
> traumatized to eat or sleep.  The Oregon State Hospital
> progress notes describe him as eating well with
> appetite, gaining more than 10 pounds since admission
> and displaying a positive affect with peers on the unit.
> Staff have observed him regularly sleeping throughout
> the night with little incident.
>
> * * *
>
> There has been no evidence or indication of a
> dissociative incident while at [the] Oregon State
> Hospital.
>
> During the evaluation the [Petitioner] was able to
> discuss recent living arrangements, activities, and
> employment while providing histor[ical] information with
> little apparent difficulty.  When the questions began to
> touch on legal issues, his reported knowledge of his
> charges became vague and evasive, often reporting that

4 - OPINION AND ORDER -

he could not remember large parts of the last few years.
He told this evaluator that his memory difficulties have
been consistent over the last few years and that he had
a complete lack of knowledge and memory of the
incidences regarding his legal charges.   The police
report presents him as remembering specific incidences
and being able to provide reasonable timeframes without
apparent memory problems.  The results of [Petitioner's]
evaluation are not consistent with the presenting
complaint or of any diagnosis accepted as a mental
disease or defect.

Pet. Exh. 10, pp. 4-5.   Dr. Corbett diagnosed Petitioner with

pedophilia, alcohol abuse, and malingering.   Pet. Exh. 10, p. 5.

He concluded Petitioner was able to aid and assist in his defense,

and explained that "there was no indication of a mental disease or

defect that would interfere with the [Petitioner's] ability to

understand the nature of the proceedings against him, the ability

to assist and cooperate with counsel, or the ability to

participate in his own defense."   Pet. Exh. 10, p. 5.

On October 26, 2006, Petitioner appeared before the trial

judge and entered a not guilty plea.  Resp. Exh. 102, p. 8.   The

case was set for a jury trial in February 2007.  Resp. Exh. 102,

p. 8.  On December 8, 2006, Petitioner changed his plea, pleading

guilty to one count of Sodomy in the First Degree, two counts of

Attempted Sodomy in the First Degree, one count of Using a Child

in a Display of Sexually Explicit Conduct, and one count of Sexual

Assault of an animal. Resp. Exh. 101.  The trial judge sentenced

Petitioner to a total of 190 months of imprisonment.  Resp. Exh.

101.

5 - OPINION AND ORDER -

Petitioner did not file a direct appeal or a petition for state post-conviction relief ("PCR").   On December 14, 2011, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court.   The Court appointed counsel, and on April 5, 2012, Petitioner filed an Amended Petition for Writ of Habeas Corpus alleging four claims for relief.

Respondent contends habeas corpus relief should be denied because this action was not timely filed and because Petitioner procedurally defaulted all of the claims for relief alleged in his Amended Petition.   Petitioner concedes he did not file his habeas petition within the limitations period, but argues equitable tolling should be applied to excuse his untimeliness.   Petitioner also concedes he procedurally defaulted all claims for relief, but argues his procedural default should be excused because his attorney abandoned him.

## DISCUSSION

### I.   Timeliness

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations for filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.   28 U.S.C. § 2244.   The limitations period begins to run on the date the conviction becomes final, *i.e.*, the completion of the direct appeal process.   28 U.S.C. § 2244(d)(1).

6 - OPINION AND ORDER -

The limitations period is subject to statutory tolling during the pendency of properly filed state post-conviction or other collateral state proceedings.    28 U.S.C. § 2244(d)(2).    The limitations period may also be equitably tolled in appropriate circumstances.    *Holland v. Florida*, 560 U.S. 631, 647 (2010).

A habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."    *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).    The determination whether equitable tolling should apply is fact-dependent and should be made on a case-by-case basis.    *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010).

The threshold upon which a petitioner may obtain equitable tolling is very high, "lest the exceptions swallow the rule."    *Id.* at 1097, (citing *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).    "A petitioner seeking equitable tolling bears the burden of showing both that there were extraordinary circumstances, and that the extraordinary circumstances were the cause of his untimeliness."    *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010) (internal quotation marks omitted, emphasis in original), *cert. denied*, 132 S.Ct. 286 (2011).

Mental illness can constitute an "extraordinary circumstance" entitling a petitioner to equitable tolling. *Laws v. Lamarque*, 351 F.3d 919, 922-23 (9th Cir. 2003). The Ninth Circuit articulated a two-part test a petitioner must meet to show that a mental impairment qualifies him for equitable tolling of the limitations period:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, *see Holland*, 130 S.Ct. at 2562, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. [Footnote omitted]
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. *See id.*

*Bills*, 628 F.3d at 1100. The *Bills* test "reiterates the stringency of the overall equitable tolling test:  the mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Circ. 2014) (citing *Bills*, 628 F.3d at 1100).

In general, the level of mental impairment necessary to justify equitable tolling is limited to cases of "profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *see also Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998) (finding equitable tolling for a mental condition appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").    For example, the Ninth Circuit found equitable tolling appropriate in a case where the prisoner had "serious mental problems for many years," and suffered from a psychotic disorder accompanied by delusions, hallucinations, inappropriate affect, social withdrawal, bizarreness, fragmentation of thinking, and incoherence. *Calderon v. U.S. Dist. Ct. for Centr. Dist. of Cal (Kelly V)*, 163 F.3d 530, 541-42 (9th Cir. 1998) (en banc), *overruled on other grnds by Woodford v. Garceau*, 538 U.S. 202 (2003); *see also Calderon v. U .S. Dist. Ct. for Centr. Dist. of Cal. (Kelly III)*, 127 F.3d 782, 788 n. 1 (9th Cir. 1997) (Tashima, J., dissenting) (describing *Kelly's* mental illness).  In the *Kelly* case, several prison psychiatrists evaluated Kelly, and none of them could ascertain that he was sane. *Kelly III*, 127 F.3d at 788 n. 1.

More recently, in *Forbess v. Franke*, 749 F.3d 837 (9th Cir. 2014), the Ninth Circuit found the petitioner entitled to

equitable tolling.  "There, the petitioner 'believed he was working undercover for the FBI, and his trial was a 'sham' orchestrated to lure his ex-wife out of hiding and arrest her for being part of an extensive drug distribution operation,' and the 'magistrate judge explicitly found that Forbess's delusions persisted throughout the relevant [limitations] period.'" *Yow Ming Yeh*, 751 F.3d at 1078 (quoting *Forbess*, 743 F.3d at 840).

With respect to the necessary diligence, "the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Bills*, 628 F.3d at 1101.  A petitioner may satisfy the diligence prong if "the petitioner's mental impairment prevented him from locating assistance or communicating with or sufficiently supervising any assistance actually found."  *Id*.  Stated otherwise, "the due diligence prong of the *Bills* test requires a petitioner whose mental impairment is so severe that he is unable understand the need to timely file or to file a petition on his own to demonstrate that due to his mental impairment, he also lacked 'the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure . . . [t]he petitioner therefore always remains accountable for diligence in pursuing his or her rights.'"  *James v. Harrington*, 2011 WL 3585941, *20 (C.D. Cal., Mar. 9, 2011) (quoting *Bills*, 628 F.3d at

10 - OPINION AND ORDER -

1100).  The court must review "the totality of the circumstances" to determine if the mental impairment was the "but-for cause of any delay."  *Bills*, 628 F.3d at 1100.

Here, Petitioner argues he is entitled to equitable tolling because, despite his diligence in attempting to timely file his habeas petition, he was thwarted by his mental health issues and the conditions of his confinement, which resulted in his being medicated and segregated for his own protection.  In support of this argument, Petitioner relies upon the psychological evaluations performed before he pleaded guilty and upon a record of his institutional programming while incarcerated.

The mental health records submitted by Petitioner do not establish that he had a mental impairment before he entered his guilty plea.  Moreover, although the programming record indicates Petitioner participated in mental health programming and was at times housed in the special management unit, it also indicates he participated in religious services and held prison jobs.  While Petitioner argues he was medicated, he presents no medical or mental health evidence thereof.  Petitioner has not established his mental state rendered him unable to personally prepare and effectuate the filing of a habeas petition within the limitations period.

Petitioner further argues that he diligently sought to obtain his file from his trial attorney and that his untimely filing was

11 - OPINION AND ORDER -

due to the attorney's refusal to provide him with records from his case. Petitioner has not, however, presented any evidence that he attempted to obtain his file prior to filing a motion with the trial court in August 2011, well after the limitation period had expired. Moreover, the facts upon which Petitioner bases his claims in this habeas action were known to him; there is no indication that the lack of the attorney records somehow precluded him from initiating a habeas action.

Petitioner has not demonstrated extraordinary circumstances to equitably toll the AEDPA one-year statute of limitations. As such, the action is untimely.

## II.  **Procedural Default**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context

12 - OPINION AND ORDER -

in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards*, 529 U.S. at 451; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague v. Lane*, 489 U.S. 288, 298 (1989). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged

13 - OPINION AND ORDER -

constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner argues there is "cause" to excuse his procedural default because his trial attorney ceased acting as Petitioner's agent and instead interposed his own decision-making and usurped Petitioner's choice to plead guilty. Petitioner does not, however, present any evidence supporting this argument and, in any event, does not explain how counsel's actions at the guilty plea stage were an external event preventing Petitioner from subsequently exhausting his state remedies by filing a direct appeal or a PCR petition.

Petitioner also contends his trial counsel "abandoned" him and then kept his records until the trial court intervened. As noted above, however, Petitioner presents no evidence he attempted to obtain his trial attorney's file until August 2011. Moreover, Petitioner fails to explain how a lack of access to his attorney's records somehow prevented Petitioner from filing a direct appeal or a state PCR petition.

14 - OPINION AND ORDER -

Petitioner failed to establish cause to excuse his procedural default.  Accordingly, he cannot prevail on his habeas claims in this Court.

### CONCLUSION

For these reasons, the Court DENIES the Amended Petition for Writ of Habeas Corpus and DISMISSES this action.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court DENIES a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___28th___ day of October, 2014.

_____
ANNA J. BROWN
United States District Judge